UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KIMBERLY A. KERR

    Plaintiff,

    v.          **REPORT AND RECOMMENDATION**
                   **09-CV-01119 (GLS)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

    Defendant,

## I. Introduction

In August 2006, Plaintiff Kimberly Kerr filed an application for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff alleges she has been unable to work since February 28, 2000, due to neck and shoulder impairments, carpal tunnel syndrome, and fibromyalgia. The Commissioner of Social Security ("Commissioner") denied Plaintiff's applications.

Plaintiff, through her attorney, Lawrence D. Hassler, of the Conboy, McKay Law Firm, commenced this action on October 5, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On April 1, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

## II. Background

The relevant procedural history may be summarized as follows: Plaintiff

protectively filed for DIB on August 21, 2006, alleging disability beginning on February 28, 2000 (R. at 25).[1] Plaintiff alleged disability due to neck and shoulder impairments, carpal tunnel syndrome, and fibromyalgia. The application was denied (R. at 35-38). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") (R. at 47). A video hearing was held between Canton, New York and Syracuse, New York, on June 25, 2008, before ALJ John M. Lischak (R. at 392-412). Plaintiff, represented by counsel, appeared and testified (R. at 397-411). On March 23, 2009, ALJ Lischak issued a decision finding Plaintiff not disabled (R. at 14-24). Plaintiff filed a request for review of that decision (R. at 9). The ALJ's decision became the Commissioner's final decision on August 6, 2009, when the Appeals Council denied Plaintiff's request for review (R. at 5-8).

Plaintiff, through counsel, timely commenced this action on October 5, 2009. (Docket No. 1). The Commissioner interposed an Answer on February 3, 2010. (Docket No. 8). Plaintiff filed a supporting Brief on February 4, 2010. (Docket No. 10). The Commissioner filed a Brief in opposition on March 29, 2010. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be

---

[1] Citations to "R" refer to the Administrative Transcript. (Docket No. 7). Plaintiff had previously applied for DIB on March 21, 2003, alleging February 28, 2000, as her onset date (R. at 323-25). This application was initially denied on July 9, 2003, and that decision was affirmed by the ALJ on September 11, 2004 (R. at 14, 316-19). Plaintiff failed to appeal that decision.
[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

2

remanded for further proceedings.

### III.     Discussion

#### A.     Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258

(2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[3] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

---

[3] The five-step process is detailed as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

For the reasons that follow, it is recommended that the matter be remanded for failure to properly consider Plaintiff's credibility and for failure to adequately discuss Listing 1.04A.

**B.   Analysis**

    **1.   The Commissioner's Decision**

The ALJ made the following findings with regard to factual information as well as the five-step process set forth above: The ALJ first found that Plaintiff met the insured status requirements of the Act through September 30, 2007 (R. at 16). At step one, the ALJ found that, after her alleged onset date of February 28, 2000, Plaintiff had engaged in "substantial gainful activity through February 6, 2002 other than for the period from March 8, 2001 to October 8, 2001" (R. at 16-17). At step two, the ALJ found Plaintiff's "mild bilateral carpal tunnel syndrome, osteoarthritis and mild disc space narrowing of the cervical spine at C6-7 with secondary fibrositis, fibromyalgia" to be severe

impairments (R. at 17). The ALJ then found that Plaintiff's impairments did not either singly, or in combination, meet or medically equal a Listed impairment (R. at 19). The ALJ found Plaintiff was capable of

> perform[ing] the full range of sedentary work as defined in 20 CFR 404.1567(a). The claimant [wa]s capable of lifting and/or carrying 10 pounds occasionally, less than 10 pounds frequently, standing and/or walking at least 2 hours in an eight-hour workday and sitting for six hours in an eight-hour workday with unlimited pushing/pulling as shown for lifting and carrying

(R. at 20). Plaintiff's subjective complaints were found to be "not credible to the extent they [we]re inconsistent with the . . . residual functional capacity assessment" (R. at 23). Plaintiff was a younger individual, with at least a high school education and was capable of communicating in English. Id. Based on Medical-Vocational Rules 201.28[4] and 201.21,[5] the ALJ found that there were a significant number of positions in the national economy that Plaintiff could have performed (R. at 24). Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date she was last insured, September 30, 2007 (R. at 24).

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ erred in evaluating Plaintiff's credibility; b) the ALJ failed

---

[4] Medical-Vocational Rule 201.28 directs a finding of not disabled for a younger individual aged 18-44, who was a high school graduate, with non-transferable skills from skilled or semiskilled past work, and capable of performing sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.28.
[5] Medical-Vocational Guideline Rule 201.21 directs a finding of not disabled when a claimant is capable of performing sedentary work, a younger individual aged 45-49, a high school graduate or more, and has skilled or semiskilled past work, but those skills are not transferable. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.21.

to properly consider Listing 1.04A; and c) the ALJ erred at steps four and five of the sequential evaluation. The Court will discuss each argument in turn:

### a) The ALJ Failed to Properly Evaluate Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly evaluate her credibility. Plaintiff's Brief, pp. 16-18.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); Social Security Ruling 96-7p, 1996 WL 374186, at *2 (S.S.A.) [hereinafter SSR 96-7p]. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. SSR. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c). Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the Regulations.[6] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

---

[6] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms;

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

Here, the ALJ completed the two-step analysis by finding "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not credible to the extent they [we]re inconsistent with the . . . residual functional capacity assessment" (R. at 23). However, the ALJ failed to engage in any analysis of the requisite factors. Despite Defendant's argument that the ALJ properly considered the factors, a careful review of the ALJ's decision shows that he was only reciting Plaintiff's testimony (R. at 22-23); Defendant's Brief, pp. 25-27. For example, the ALJ noted Plaintiff's testimony that she had morning headaches; that she received "nerve blocks, physical therapy, and carpal tunnel surgery on the left"; and that she engaged in various daily activities including reading, watching television and an occasional evening walk (R. at 23). However, the ALJ's discussion of the factors was simply a recitation of Plaintiff's testimony without any meaningful analysis of how those factors detracted from her credibility. Indeed, the ALJ failed to offer any explanation as to why Plaintiff's subjective complaints were found less than fully credible. Thus, the Court recommends remand on that basis. See Fox v. Astrue,

---

(vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

2008 WL 828078, at *14 (N.D.N.Y. March 26, 2008) (remanding, in part, because the ALJ failed to discuss many of the factors).

Furthermore, a proper analysis of Plaintiff's credibility is especially important here, because her symptoms further support her claim that she meets Listing 1.04A, as discussed below. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(d) ("The musculoskeletal listings that include pain or other symptoms among their criteria also include criteria for limitations in functioning as a result of the listed impairment, including limitations caused by pain. It is, therefore, important to evaluate the intensity and persistence of such pain or other symptoms carefully in order to determine their impact on the individual's functioning under these listings.").

Based on the foregoing, the Court recommends remand for failure to properly evaluate Plaintiff's credibility. On remand, the ALJ should also consider whether, as Plaintiff argues, her medical treatment history bolsters her credibility. Plaintiff's Brief, pp. 17-18; SSR 96-7p, at 1996 WL 374186, at *7 (noting that "a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.")

### b) The ALJ Failed to Adequately Discuss Listing 1.04A

Plaintiff argues that the ALJ's analysis at step three of the sequential evaluation was inadequate. Plaintiff's Brief, pp. 10-13. Plaintiff further contends that the case should be remanded solely for calculation of benefits, based on Listing 1.04A for a neck impairment. Plaintiff's Brief, p. 13.

In this case, the relevant requirements to meet Listing 1.04A are as follows: (1) "[e]vidence of nerve root compression;" (2) "neuro-anatomic distribution of pain;" (3) "limitation of motion of the spin;" (4) "motor loss (atrophy with associated muscle weakness or muscle weakness);" and (5) "sensory or reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Defendant argues that the medical evidence failed to establish the final two criteria: motor and sensory or reflex loss. Defendant's Brief, p. 19-21.

At step three, the ALJ found "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (R. at 19). The ALJ then specifically ruled out several Listings, including 1.04A (R. at 19-20). However, the ALJ's sole discussion of Listing 1.04A consisted of reciting its requirements without any analysis of the medical evidence or Plaintiff's complaints. The ALJ offered no further explanation of what requirements were not met, or what medical evidence supported his finding. In light of the evidence discussed below, the Court finds that Plaintiff was owed a discussion of how the evidence failed to establish that she met Listing 1.04A. Brown ex rel. S.W. v. Astrue, 2008 WL 3200246, at *10 (N.D.N.Y. Aug. 5, 2008) (quoting Giles v. Chater, 1996 WL 116188, at *5 (W.D.N.Y. Jan. 8, 1996)) ("Where the claimant's symptoms as described in the medical evidence appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings.").

Although Defendant does not appear to contest the first three requirements of Listing 1.04A, the Court will engage in a brief discussion of those criteria. The record contains several references to nerve root compression, the first requirement for Listing

1.04A. 20 C.F.R. Pt. 404, Subpt. P, App. 1. For example, on July 2, 2004, a nurse practitioner noted that "an MRI that show[ed] a 6/7 herniation with impingement in the thecal sac"[7] (R. at 242). A May 2005 nerve conduction study found "C7 radiculopathy"[8] (R. at 264), further suggesting nerve root compression. See Nerve Root Disorders (Radiculopathies), *The Merck Manuals Online Medical Library*, http://www.merck.com/mmpe/sec16/ch223/ch223g.html ("Nerve root disorders (radiculopathies) are precipitated by chronic pressure on a root in or adjacent to the spinal column."). The second requirement of Listing 1.04A is "neuro-anatomic distribution of pain." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Throughout the record, Plaintiff continually complained of pain in her neck, shoulders, and arms. See (R. at 234-71) (Plaintiff's treatment history with the North Country Orthopaedic Group dating from February 2001 through August 2007). Finally, several medical sources also found a limitation of motion in Plaintiff's cervical spine, the third requirement for Listing 1.04A. Id. For example, on March 20, 2003, Dr. Charles Wasicek, Plaintiff's treating physician, found "a significant decrease with lateral bending and rotation of her neck" (R. at 169). Dr. James Naughten, a Social Security Administration ("SSA") consultative examiner, also found limitations of movement in the cervical spine on December 26, 2006 (R. at 217).

Defendant argues that the evidence failed to establish the final two requirements of Listing 1.04A: motor loss and sensory or reflex loss. Defendant's Brief, pp. 19-21.

---

[7] The thecal sac "is the name given for the elongated membraneous tube that extends from the brain to the end of the spine in which the spinal cord and nerve roots run." Terminology for CT scans and MRI scans (Lumbar region), MY-SPINE.com, http://www.my-spine.com/terminology-for-ct-scans-and-mri-scans-lumbar-region.html.
[8] Radiculopathy is defined as a "[d]isorder of the spinal nerve roots." Stedmans Medical Dictionary (27th ed. 2000), *available at* STEDMANS 347610 (Westlaw) [hereinafter Stedmans].

However, after a careful review of the record, the Court finds that the record does indeed contain some evidence of these two criteria, as discussed below.

The fourth criterion for Listing 1.04A is "motor loss (atrophy with associated muscle weakness or muscle weakness)." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Here, the record contains several findings which indicate muscle weakness. For example, Plaintiff's medical sources noted varying degrees of hand grip or grasp weakness in February 2002 (R. at 155); March 2002 (R. at 237); October 2003 (R. at 240); and February 2005 (R. at 245). Also, at several examinations in 2007 and 2008, Plaintiff's bilateral elbow extension was found to be "not very strong" (R. at 279-81, 284).

The last requirement of Listing 1.04A is "sensory or reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Court acknowledges that the record contains little objective evidence of sensory or reflex loss. However, Plaintiff's complaints of hand numbness are well documented in the record (R. at 236, 239, 244, 245). This numbness, at times, resulted in her dropping items (R. at 245). While some of Plaintiff's numbness can be attributed to her carpal tunnel syndrome, she continued to complain of numbness, albeit somewhat diminished, after her left carpal tunnel release in May 2006 (R. at 249-50). According to her treating physician, Dr. Kevin Scott, her complaints post left carpal tunnel release indicated that the numbness "[wa]s coming from the C7 radiculopathy" (R. at 250).

Thus, given the above cited evidence, Plaintiff was owed a more substantive discussion of why she did not meet Listing 1.04A. See Martinbeault v. Astrue, 2009 WL 5030789, at *6 (N.D.N.Y. Dec. 14, 2009) (finding that the ALJ's "explanation [wa]s plainly insufficient" where his sole discussion at step three consisted of finding that

"'Section[s] 112.05, 112.11, and 112.04 of the Listings ha[d] been considered but [we]re not met or medically equaled.'"). Therefore, if, on remand, Plaintiff is once again found not disabled at step three, the ALJ must offer an explanation of what criteria from Listing 1.04A Plaintiff failed meet what evidence supports that finding. However, the Court will not remand solely for calculation of benefits, because, as Defendant argues, there is some objective medical evidence that Plaintiff did not have the requisite motor, reflex, or sensory losses.

### c) The ALJ's Findings at Steps Four and Five are Necessarily Flawed

Plaintiff argues that the residual functional capacity finding was not supported by substantial evidence because it failed to contain all her restrictions. Plaintiff's Brief, 13-15. Plaintiff further contends that the ALJ erred in relying upon the Medical-Vocational Guidelines in finding Plaintiff not disabled. Plaintiff's Brief, pp. 18-20.

The Court has recommended remand for failure to properly evaluate Plaintiff's credibility and for failure to set forth his reasoning as to why Plaintiff failed to meet Listing 1.04A. Therefore, the ALJ's remaining findings throughout the sequential analysis are necessarily flawed.

## IV.  Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to

assure the proper disposition of [a] claim." Kirkland v. Astrue, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Based on the foregoing the Court recommends remand for failure to properly evaluate Plaintiff's credibility and for failure to set forth his reasoning at step three of the sequential analysis.

## V.     Conclusion

For the foregoing reasons, the Court finds that a remand is necessary and warranted. Accordingly, it is respectfully recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:    Syracuse, New York
          September 7, 2010

### ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and

Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waves the right to appeal the District Court's Order.**
*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


DATED:   Syracuse, New York
         September 7, 2010